IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**STEPHANIE LYNN DAVIS,**                         Case No. 3:13-cv-00443-PK

        Plaintiff,                                              **OPINION AND ORDER**

    v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

    Stephanie Davis ("plaintiff") seeks judicial review of a final decision of the Commissioner

of Social Security ("Commissioner") denying her applications for Title II disability insurance

benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Social Security Act

("Act"). All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and

Page 1 - OPINION AND ORDER

28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case dismissed.

## PROCEDURAL BACKGROUND

On June 9, 2009, plaintiff protectively applied for DIB and SSI. Tr. 145, 148-57. After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 85-98, 102-34. On May 24, 2011, an ALJ hearing was held, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 41-84. On November 18, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 23-34. After the Appeals Council denied review, plaintiff filed a complaint in this Court. Tr. 1-4.

## FACTUAL BACKGROUND

Born on February 27, 1969, plaintiff was 38 years old on the amended alleged onset date of disability[1] and 42 years old at the time of the hearing. Tr. 33, 49, 52, 148, 155, 176. Plaintiff completed the eleventh grade, as well as all of the classes required to obtain a GED except for those relating to math. Tr. 50-51, 976. She worked previously as a fabric cutter, stocker, cashier, housekeeper, janitor, and receptionist. Tr. 78-79, 177. Plaintiff alleges disability beginning April 16, 2007, due to "Degenerative Disk Disease, Bulging Discs, ADHD, Intermittent Explosive/Mood Disorder, [and an] Overactive Limbic System." Tr. 176.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards

---

[1] Plaintiff initially alleged disability as of February 27, 1969. Tr. 52, 148, 155. At the hearing, plaintiff amended her alleged onset date to April 16, 2007, explaining that "[s]he's not alleging and never meant to allege that she hasn't been able to work since birth." Tr. 52.

and the findings are supported by substantial evidence of record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 25. At step two, the ALJ determined that plaintiff had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), mood disorder, personality disorder, pathological gambling in remission, substance abuse in remission, and degenerative disc disease. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 26.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work:

> [s]he can lift and carry up to ten pounds frequently and 20 pounds occasionally. She
> can stand and walk up to four hours in an eight-hour day and sit for up to six hours.

Page 4 - OPINION AND ORDER

She can frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally stoop and crouch. She is able to remember, understand and carry out simple to detailed, but not complex tasks or instructions consistent with a specific and vocational preparation (SVP) rating of 1 or 2. She cannot perform work requiring public contact, but can work in proximity to coworkers and would respond appropriately to supervision.

Tr. 27.

At step four, the ALJ determined that plaintiff could not perform her past relevant work. Tr. 33. At step five, the ALJ found, based on the VE's testimony, that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as small products assembler, paper sorter/recycler, and solderer. Tr. 33-34. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 34.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) failing to find her somatization and intermittent explosive disorders as severe impairments at step two; (3) neglecting to find her presumptively disabled under listing 1.04 at step three; and (4) formulating an incomplete RFC, such that the VE's testimony was invalid. Pl.'s Opening Br. 23-35.[2]

I.    Plaintiff's Credibility

---

[2] In the context of challenging her RFC assessment, plaintiff asserts that "the ALJ did not account for the limitations identified by the treating medical providers, the lay witnesses or Plaintiff." Pl.'s Opening Br. 34. Yet plaintiff neglected to identify the name of any third party or medical source, or cite to the opinion evidence that was allegedly wrongfully rejected. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotations omitted); *Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (party failed to preserve certain issues on appeal by "provid[ing] little, if any, analysis to assist the court in evaluating the legal challenge"); *see also McLeod v. Astrue*, 640 F.3d 881, 887–88 (9th Cir. 2011) (as amended) (party seeking reversal bears the burden of establishing harmful error). The Court therefore declines to further address these issues.

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported

by substantial evidence, for rejecting her subjective symptom statements concerning the extent and

severity of her impairments. When a claimant has medically documented impairments that could

reasonably be expected to produce some degree of symptoms, and the record contains no affirmative

evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . .

symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*,

80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant

is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what

evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50

F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is

supported by substantial evidence in the record, [the court] may not engage in second-guessing."

*Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is primarily disabled by her ADHD and back pain.

Tr. 56-61. Because of her ADHD, plaintiff stated that she can focus for "[f]ifteen, 20 minutes, tops,"

which precludes her from working "a 40-hour-a-week job." Tr. 68-69. Due to her constant back

pain, plaintiff explained that she cannot "[s]tan[d] up for long periods of time." Tr. 56-60. Plaintiff

also endorsed problems with anxiety, crowds, and mood swings. Tr. 62-64, 68-74. When asked to

describe what she did the previous day, plaintiff remarked that she woke up "in the morning," made

coffee, "grabbed a newspaper, [and] went back to bed for a couple of hours"; she later "got up, took

a shower," and then "got bored [,] went outside [,] walked around the apartment for a minute, came

back in the house, checked the mail," and made a sandwich for lunch, after which she "paced from the bedroom to the living room." Tr. 63. She specified that, on a typical day, she may go to a doctor's appointment, cook, "do arts and crafts stuff," and/or perform household chores. Tr. 60, 63-64, 66, 68.

After summarizing plaintiff's hearing testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not fully credible due to her inconsistent statements, her activities of daily living, and the medical record, which, amongst other things, showed improvement with proper treatment. Tr. 28-31.

Significantly, the ALJ resolved that plaintiff made inconsistent statements concerning "the extent of her drug and alcohol use." Tr. 30. Inconsistencies in a claimant's testimony can serve as a clear and convincing reason for discrediting it. *Burch*, 400 F.3d at 680; *see also Thomas*, 278 F.3d at 959 (claimant's inconsistent statements about her substance abuse "supports the ALJ's negative conclusions about [her] veracity"). Substantial evidence supports the ALJ's conclusion in this case. Plaintiff testified at the hearing that "she used methamphetamines only once for about five months in 2007, and never used alcohol." Tr. 30, 66-67. Yet, as the ALJ noted, "the record shows a long history of drug and alcohol use." Tr. 30. In December 2001, plaintiff informed a medical provider that she "is a recovering alcoholic" and "has been a multi-drug abuser." Tr. 405. When she began treatment while incarcerated in November 2008, plaintiff reported using methamphetamines regularly in 2003, 2005, and 2007, and alcohol daily until 2005. Tr. 641. At that time, she also reported a history of marijuana abuse, which extended through 2007. Tr. 642. In July 2009, however, plaintiff endorsed limited methamphetamine and cannabis use, and denied "drink[ing]

currently or historically." Tr. 814. During her November 2009 psychological assessment with Kay Stradinger, Psy.D., plaintiff stated the "last time" she smoked marijuana "was when she was 20 years old," or in 1989. Tr. 827. She also admitted to using methamphetamines solely in 2003 and did not mention any issues with alcohol. Tr. 827-28. The ALJ reasonably determined that plaintiff's inconsistent statements and lack of candor about her drug and alcohol abuse undermined her credibility.

The ALJ noted several other inconsistencies in the record. Tr. 28, 30. For example, plaintiff testified that she had significant learning problems and was in special education, which rendered her unable to complete high school. Tr. 73-74. Plaintiff's high school transcript reflects that she "attend[ed] classes through her graduation date, with no indication of special education courses" and obtained an above average GPA. Tr. 30, 169. Further, plaintiff testified at the hearing that she does not read and had never completed book, but the record contains multiple references to her reading for leisure. *Compare* Tr. 66-67, *with* Tr. 189, 206, 680, 814, 828.

In addition, the ALJ determined that plaintiff "has described daily activities, which are not limited to the extent one would expect given her complaints of disabling symptoms and limitations." Tr. 29. Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The record before the Court demonstrates that plaintiff cooked, performed household chores, was independent in her self-care, shopped, paid bills, and used public transportation. Tr. 29, 185-88, 259, 825, 828. She also could lift or carry 30 pounds frequently, walk for five blocks continuously, "be up and active [for] 3 or 4 hours" before needing to rest, and bend squat, and climb stairs "[a] few times per hour." Tr. 193, 242-44. In 2009, she expressed

"doing some caregiving for [a] friend who is partially paralyzed." Tr. 883. Likewise, in 2010, she disclosed that she was the "caretaker for [her significant other,] who pays her and manages her money." Tr. 888. Moreover, plaintiff attended school three days a week, bi-monthly counseling sessions, and daily meetings for gambling and substance abuse. Tr. 29-30, 185, 189, 828; *see also* Tr. 680, 815. As the ALJ correctly concluded, this evidence belies plaintiff's hearing statements that she was completely disabled by her mental and physical impairments.

Lastly, the ALJ found that mental health "treatment has been generally successful in controlling [plaintiff's] symptoms." Tr. 29. An alleged impairment is not disabling if it can be adequately controlled with treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective testimony where medical records showed that the claimant's mental symptoms improved with the use of medication). In March 2008, after commencing medication management and a consistent treatment plan while incarcerated, plaintiff declared "she was doing very well," "her mood had been 'great,'" her "sleep had improved," and she had been more active and stable. Tr. 677. In May 2008, she "reported that her mood has been stable for sometime now [and] her medications are working very well (she has had no medications change[d] since 2/5/08)"; she was "very busy" with computers, GED tests, and working as a dorm orderly. Tr. 675. In September 2008, plaintiff stated that "[s]ince I've started and maintained my medications I am a completely different person." Tr. 673. Subsequent records establish that when she was receiving regular treatment and taking her medications as prescribed, plaintiff generally felt better, slept well, was able to engage in hobbies, and apply for work. *See, e.g.*, Tr. 826, 886, 890, 894, 973, 976, 978-79.

Therefore, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding is sustained.

II.    Step Two Finding

Plaintiff next asserts the ALJ failed to include her somatization and intermittent explosive disorders as medically determinable severe impairments at step two. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520, 416.920. Only "acceptable medical sources" can diagnose and establish that a medically determinable impairment exists. *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005); 20 C.F.R. §§ 404.1513(a), 416.913(a); *see also* SSR 06-03p, *available at* 2006 WL 2329939. An impairment is "not severe" if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Nevertheless, "[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Initially, the only references in the record to a somatization disorder are from nonacceptable medical sources and/or transpired several years before the amended alleged onset date. Tr. 685 (nurse practitioner diagnosing plaintiff with mood disorder, somatization disorder, and polysubstance dependence in April 2004), 720 (Leslie Morey, Ph.D., diagnosing plaintiff with substance dependence, alcohol abuse, somatization disorder, and major depressive disorder in December 2003); *see also Carmickle*, 533 F.3d at 1165 (medical reports that predate the onset of disability

Page 10 - OPINION AND ORDER

ordinarily are of limited relevance). Plaintiff's more recent medical records from the pertinent time period do not reflect this diagnosis. *See, e.g.*, Tr. 803 (discharge note, covering the period from November 2008 through May 2009, reflecting diagnoses of amphetamine dependence in remission, alcohol dependence in remission, cannabis dependence in remission, pathological gambling in remission, and a mood disorder not otherwise specified), 810 (July 2009 diagnoses of bipolar disorder, amphetamine abuse in remission, and pathological gambling), 830 (November 2009 diagnoses of amphetamine dependence in remission, alcohol dependence in remission, cannabis dependence in remission, pathological gambling in remission, and a mood disorder not otherwise specified); 986 (May 2011 diagnosis of ADHD).

Thus, although the medical record contains multiple references to plaintiff's mental impairments, medical providers differ in their diagnoses. *Id.* In resolving this ambiguity in the record, the ALJ determined that plaintiff's ADHD, mood disorder, personality disorder, pathological gambling in remission, substance abuse in remission, and degenerative disc disease were severe at step two. Tr. 25. Because the ALJ resolved step two in plaintiff's favor, any error in designating a specific impairment as severe will not result in reversible error unless the RFC assessment failed to adequately account for plaintiff's well-supported limitations. *See Jensen v. Astrue*, 2012 WL 4470507, *2-3 (D.Or. Sept. 25, 2012) (ALJ did not err at step two in determining that the claimant's post-traumatic stress disorder and anxiety were non-severe because he identified other medically determinable severe physical and mental impairments) (citations omitted); *see also Burch*, 400 F.3d at 682-84 (even assuming the ALJ erred in finding that the claimant's obesity was non-severe, such an error was harmless because step two was resolved in the claimant's favor and the ALJ considered obesity in formulating the RFC).

Page 11 - OPINION AND ORDER

In developing the RFC, the ALJ expressly considered limitations imposed by all of plaintiff's impairments, even those that were not severe, and determined that several restrictions were warranted. Tr. 27-32. In particular, the ALJ found that plaintiff was limited to work requiring simple, routine tasks and no public contact. Tr. 27. Plaintiff does not identify what further restrictions flow from her alleged somatization or intermittent explosive disorder, or address how the ALJ's alleged error in assessing these conditions was harmful. *See generally* Pl.'s Opening Br.; Pl.'s Reply Br.; *see also Corso v. Colvin*, 2014 WL 950029, *5-7 (D.Or. Mar. 11, 2014) (upholding the ALJ's decision where the condition that was allegedly omitted as severe at step two was considered as part of the RFC assessment and the claimant failed to "identify what further restrictions flow from this impairment") (citing *McLeod*, 640 F.3d at 887). Additionally, plaintiff fails to explain how the record's sole reference to an intermittent explosive disorder as a diagnosis is not captured in the ALJ's finding that she suffers from severe medically determinable mood and personality disorders. Tr. 698-99. Notably, Dr. Stradinger, to whose opinion the ALJ afforded weight, diagnosed plaintiff with a mood disorder based, in part, on her reports of "[i]ntermittent explosive anger." Tr. 32, 825, 830-31. Without more, plaintiff cannot establish that her somatization and intermittent explosive disorders resulted in different or more extreme limitations than those already identified in the RFC.

In sum, the ALJ found that plaintiff had severe mental and physical impairments at step two, performed the requisite psychiatric review technique at step three, and considered the effect of all of plaintiff's conditions in devising the RFC. As such, the ALJ's decision is affirmed as to this issue.

III.    <u>Step Three Finding</u>

Plaintiff also contends that the ALJ erred at step three in determining that her impairments did not meet or equal a listing 1.04. To establish a listed impairment at step three, the claimant must demonstrate that "all of the specified criteria [are met]." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Listing 1.04(A)[3] applies to disorders of the spine resulting in compromise of a nerve root or the spinal cord, with: "'[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).'" *Swofford v. Comm'r Soc. Sec. Admin.*, 2013 WL 3333063, *3 (D.Or. July 1, 2013) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)).

At step three, the ALJ evaluated whether plaintiff's degenerative disc disease met or equaled a listing: "while [plaintiff's] severe impairment both singly and in combination may cause some limitation these limitations do not meet or medically equal the requisite criteria for any listed impairment as set forth in the regulations, inclusive of listing 1.04." Tr. 26. Specifically, the ALJ found that "records do not show that [plaintiff] has a spine condition resulting in compromise of a nerve root or spinal cord with evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight let raising tests"

---

[3] There are two additional sets of criteria that can satisfy listing 1.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(B), (C). Although she does not specifically identify the criteria pursuant to which her appeal is brought, plaintiff only discusses the requirements of listing 1.04(A). *See* Pl.'s Opening Br. 25. Moreover, to the extent plaintiff contends that the ALJ erroneously relied on her "conservative treatment" or the fact that she "was not a surgical candidate [or] taking narcotic pain medications" in finding that she was not presumptively disabled, her argument is unavailing. Pl.'s Opening Br. 25-26. The ALJ did not consider these issues at step three of the sequential evaluation. Tr. 26-27. In any event, the record demonstrates that surgery was not advised to treat plaintiff's back condition. *See* Tr. 58, 330, 903, 975.

Page 13 - OPINION AND ORDER

or "that she has spinal arachnoiditis or chronic nonradicular pain and weakness resulting in an inability to ambulate effectively." *Id.*

In this case, substantial evidence supports the ALJ's step three finding. The record reflects no motor, sensory, or reflex loss, or positive straight-leg raising tests in the sitting and supine positions. *See Sullivan*, 493 U.S. at 530 ("[a]n impairment that manifests only some of [the listed] criteria, no matter how severely, does not qualify"). For instance, in November 2009, Terri Robinson, M.D., reported that plaintiff had no motor, sensory, or reflex loss, and normal muscle tone, except for minimally decreased strength in her bilateral hip flexors and quads. Tr. 820-24; *see also* Tr. 902-03 (emergency room record from late March 2010 reflecting no "bowel or bladder incontinence," "no loss of motor strength in lower extremities," and an intact "[d]istal neurovascular exam"), 908-09 (emergency room record from early March 2010 recording "no loss of bladder or bowel control," intact sensation, no motor loss, and normal strength). Although Dr. Robinson recorded a positive straight-leg raising test in the supine position, he nonetheless opined that plaintiff would be capable of performing work consistent with the ALJ's RFC. *Compare* Tr. 820-24, *with* Tr. 27. In March 2010, plaintiff's physical therapist reported that she had loss of lower extremity strength; however, within one month on initiating treatment, plaintiff's symptoms had improved "maybe 60%," such that she was walking half of a mile two times per week and no longer needed to take pain medication. Tr. 928-39.

To the extent that she maintains that her impaired mobility is alone sufficient to meet or equal listing 1.04, plaintiff's argument is not persuasive. The general preface to listings pertaining to musculoskeletal impairments, including listing 1.04, explains that a person is presumptively disabled, in relevant part, if he or she sustains "functional loss," which " is defined as the inability

Page 14 - OPINION AND ORDER

to ambulate effectively on a sustained basis for any reason." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a). The "inability to ambulate effectively" is, in turn, defined as "an extreme limitation of the ability to walk," including, but not limited to, "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). In other words, "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living [and] have the ability to travel without companion assistance to and from a place of employment or school." *Id.*

Even accepting plaintiff's argument, the only evidence she cites regarding mobility problems are her self-reports. *See* Pl.'s Opening Br. 25 (citing Tr. 902 (plaintiff stating, in March 2010, that "she has had a lot of difficulties with mobility" and requesting narcotics)). As discussed above, the ALJ reasonably determined that plaintiff was not fully credible and other evidence of record reflects no significant issues with ambulation. *See, e.g.*, Tr. 63-68, 188, 193, 242-44, 751-69, 820-25, 899, 979. Accordingly, the ALJ properly determined that plaintiff's back impairment did not meet or equal listing 1.04(A)'s requisite elements. *See Eggemeyer v. Colvin*, 2014 WL 1572550, *5-6 (D.Or. Apr. 15, 2014) (claimant's back impairments did not meet or equal listing 1.04 post-surgery where he was "up and moving much better and his other symptoms of incontinence have improved although they have not completely resolved," and he obtained a positive straight-leg raising test while supine but not in the seated position). Even assuming that evidence relating to plaintiff's back

Page 15 - OPINION AND ORDER

condition was capable of more than one rationale interpretation, because the ALJ's finding

concerning listing 1.04 was reasonable, it must be upheld.  *See Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).  The ALJ's step three finding is affirmed.[4]

IV.    RFC Assessment and Step Five Finding

Finally, plaintiff argues that the ALJ's RFC and, by extension, step five finding are erroneous

because they do not account for all of her impairments.  Specifically, plaintiff asserts that the ALJ

failed to include limitations: (1) described in her subjective symptom testimony, including those

relating to her inability to regularly attend work; and (2) for her moderate impairments in

maintaining social functioning and in concentration, persistence, or pace.  The RFC is the maximum

a claimant can do despite her limitations.  *See* 20 C.F.R §§ 404.1545, 416.945.  In determining the

RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that

are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's

testimony.  SSR 96-8p, *available at* 1996 WL 374184.  Only limitations supported by substantial

evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question

posed to the VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

---

[4] In the alternative, plaintiff argues the ALJ failed develop the record in regard to her
somatization disorder, intermittent explosive disorder, and listing 1.04.  The claimant bears the
burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to
further develop the record is triggered only when there is ambiguous evidence or when the record
is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d
453, 460 (9th Cir. 2001).  Neither the ALJ nor any medical source found the nearly 1000-page
record in this case to be ambiguous or insufficient for proper evaluation.  Plaintiff simply failed
to introduce any argument or evidence regarding functional impairments relating to her
somatization and intermittent explosive disorders; she also neglected to furnish medical evidence
establishing that all of listing 1.04's criteria were met.  Plaintiff's failure to carry her burden of
proof, however, does not equate to an inadequacy or ambiguity in the record.  Under these
circumstances, the ALJ's duty to more fully develop the record was not triggered.

A.    Plaintiff's Testimony

As addressed in section I, the ALJ properly discredited plaintiff's subjective symptom statements. Plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issue, is therefore without merit. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *see also* Tr. 990 (plaintiff's most recent mental health treatment records indicating that her psychological impairments would "never" cause her to be absent from work).

B.    Moderate Impairments

In December 2009, Megan Nicoloff, Ph.D., a state agency consulting source, marked on a "Psychiatric Review Technique" form that plaintiff has moderate limitations in maintaining social functioning and in concentration, persistence, or pace. Tr. 843; *see also* Tr. 942 (Joshua Boyd, Psy.D., "[a]ffirm[ing] the initial PRT/MRFC" prepared by Dr. Nicoloff in May 2010). The ALJ found that "[t]he State agency psychological consultants' opinions are consistent with the record and are given weight." Tr. 32.

"[T]he term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment [because it] does not inherently translate to a concrete functional limitation." *Brink v. Astrue*, 2013 WL 1785803, *5 (D.Or. Apr 24, 2013) (collecting cases). Rather, the mild, moderate, or severe limitations, in the broad categories of activities of daily living, maintaining social functioning, and concentration, persistence, or pace, that are assessed as part of the psychiatric review technique "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, *available at* 1996 WL 374184; *see also Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed.Appx. 15, 17–18 (9th

Cir.2012) (moderate impairments assessed on a psychiatric review technique form "in broad functional areas used at steps two and three" did not equate to concrete work-related limitations for RFC; rather, "the RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinions"). As such, "the dispositive inquiry is whether the ALJ's RFC assessment is supported by substantial evidence." *Brink*, 2013 WL 1785803 at *5 (citing *Stubbs–Danielson*, 539 F.3d at 1173–74).

> i.   Maintaining Social Functioning

In formulating a mental RFC, Dr. Nicoloff found that "[plaintiff] is capable of working w/one or two co-workers [but] should avoid public contact" in light of her moderate impairment in maintaining social functioning. Tr. 843, 849. Although not phrased as a concrete functional limitation, Dr. Nicoloff also recommended that "[w]ork feedback should be phrased in a constructive manner d/t [plaintiff's] explosive tendencies." *Id.*; *see also Griffith v. Colvin*, 2014 WL 1303102, *5 n.3 (D.Or. Mar. 30, 2014) (statements that do "not show how a claimant's symptoms translate into specific functional deficits which preclude work activity," such as suggestions about what the claimant "may," "might," or "should" do, are "not . . . work-related limitations of function that need to be reflected in the RFC") (citations and internal quotations and brackets omitted). Like Dr. Nicoloff, Dr. Stradinger observed that plaintiff "might need a structured and supportive environment in which to learn a job, given her self-image as a slow learner" and "might [also] have some difficulty interacting appropriately with, effectively, and on a sustained basis with supervisors, coworkers, and the public due to her anger issues, mood issues and impulsivity." Tr. 831.

The only other medical opinion evidence in the record concerning plaintiff's mental functioning is a check-the-box form, completed in May 2011, by nurse practitioner Damon Williams.

Tr. 986-93. Mr. Williams indicated that plaintiff was not limited in maintaining social functioning and therefore would not have difficulty appropriately interacting with members of the public, coworkers, and supervisors. Tr. 990, 992. Moreover, plaintiff specified on her Adult Function Report that, while she does not like crowds, she gets along "good" with authority figures. Tr. 188, 190-91. Likewise, on a prison treatment report from July 2009, plaintiff listed being "good with people" and "friendl[iness]" as her strengths. Tr. 815; *see also* Tr. 680 (plaintiff reporting, while incarcerated in January 2008, that "in her free time she has been reading, playing cards, and socializing").[5]

In resolving conflicts in the medical testimony and translating plaintiff's impairments into concrete functional limitations, the ALJ summarized and weighed the aforementioned evidence. Tr. 27-32. Ultimately, consistent with the opinions of Dr. Nicoloff and Dr. Stradinger, especially in light of the other evidence of record, the ALJ restricted plaintiff to work involving no public contact. Tr. 27. Plaintiff does not set forth any argument or evidence regarding what further RFC restrictions are allegedly necessary to account for this moderate impairment. *See* Pl.'s Opening Br. 33-35 (asserting broadly that "[t]he ALJ's RFC is severely deficient" but failing to specifically mention her moderate impairment in maintaining social functioning or Drs. Nicoloff or Stradinger); *see also* Pl.'s Reply Br. 3. In any event, the Court finds that the ALJ reasonably interpreted the record to conclude

---

[5] The Court acknowledges plaintiff's hearing testimony that she had a problem at one job because "I didn't want to listen to my supervisor and, and do what she wanted me to do; I would rather sit down and relax and not do my job." Tr. 53. However, the ALJ appropriately found this testimony not credible and, in any event, plaintiff's subsequent hearing statements were equivocal concerning her issues with authority figures. *See* Tr. 72 (plaintiff explaining that she "always had jobs where a supervisor would tell me something to do. If I understood it, I would be okay with it, and I would be able to do it. But if I didn't understand . . . I would make an excuse of why I can't do something").

Page 19 - OPINION AND ORDER

that no restriction in responding appropriately to supervision or coworkers was warranted. *See Bagby v. Astrue*, 2012 WL 1114298, *9-11 (D.Or. Feb. 7), *adopted by* 2012 WL 1114288 (D.Or. Apr. 3, 2012) (affirming the ALJ's decision under analogous circumstances). The ALJ's decision is upheld in this regard.

> ii.     Concentration, Persistence, or Pace

Dr. Nicoloff also found, in assessing the RFC, that plaintiff "is capable of remembering and executing simple, two step, tasks" despite her moderate impairment in concentration, persistence, or pace. Tr. 843, 849. Additionally, Dr. Stradinger opined that, although she suffers from "attention and concentration problems," plaintiff was nonetheless "capable of cognitively performing simple and repetitive work-type tasks." Tr. 831. While Mr. Williams reported that plaintiff was more limited in this category, the ALJ rejected his assessment and plaintiff does not now challenge the ALJ's findings relating to the medical opinion evidence. Tr. 31-32; *see generally* Pl.'s Opening Br.; Pl.'s Reply Br.

The ALJ therefore translated plaintiff's moderate limitation in concentration, persistence, or pace into the only concrete restriction - i.e. for simple to detailed, but not complex, tasks or instructions consistent with a SVP rating of 1 or 2 - outlined in the accepted medical evidence. *See Sabin v. Astrue*, 337 Fed.Appx. 617, 620-21 (9th Cir. 2009) (ALJ did not err in determining that, despite moderate difficulties in concentration, persistence, or pace, claimant could perform "simple and repetitive tasks on a consistent basis"); *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed.Appx. 15, 17-18 (9th Cir. 2012) (same); *Brink*, 2013 WL 1785803 at *6-7 (same); *see also Bickford v. Astrue*, 2010 WL 4220531, *11 (D.Or. Oct. 19, 2010) ("so long as the ALJ's decision is supported

Page 20 - OPINION AND ORDER

by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace") (citations omitted).  Because the ALJ's determination that plaintiff retains the ability to perform a limited range of light work is rational, it may not be disturbed. *Batson*, 359 F.3d at 1198.  The ALJ's RFC and step five finding are affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of June, 2014.

Paul Papak
United States Magistrate Judge